## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 11 2016, 7:04 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Mark Small | Robert N. Reimondo |
| Indianapolis, Indiana | Capper Tulley & Reimondo |
| | Crawfordsville, Indiana |

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re Adoption of A.M.S. (Minor Child) | March 11, 2016 |
| | Court of Appeals Case No. 54A05-1509-AD-2380 |
| A.E.S. (Father), | |
| *Appellant-Respondent,* | Appeal from the Montgomery Superior Court |
| v. | The Honorable Heather Dennison, Judge |
| D.S. (Stepfather), | Trial Court Cause No. 54D01-1504-AD-7 |
| *Appellee-Petitioner* | |

**Crone, Judge.**

## Case Summary

[1] A.E.S. ("Father") appeals the trial court's order granting the petition filed by D.S. ("Stepfather") to adopt Father's four-year-old biological daughter A.M.S. Father contends that there was insufficient evidence to support the trial court's conclusion that his consent to the adoption was not required. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

[2] A.M.S. was born on September 21, 2010. A.S. ("Mother") is her biological mother and Father is her biological father. In February 2011, when A.M.S. was approximately five months old, Father was incarcerated on charges of possession of methamphetamine. He began serving a ten-year prison sentence in May 2011. Mother brought A.M.S. to visit Father at the Montgomery County Jail approximately three times before he was transferred to the Putnamville Correctional Facility. Mother did not bring A.M.S. to visit Father after he was transferred.

[3] While Father was incarcerated during 2012, Mother received approximately five letters from Father. The letters were addressed to Mother and not to A.M.S. The content of those letters generally related to Mother and Father's relationship and only two of the five letters even mentioned A.M.S. The last letter Mother received from Father was in the fall of 2013. Again, the letter mostly concerned Mother and Father's relationship with "maybe a couple sentences" having to do with A.M.S. and "how she was." Tr. at 19. Mother

spoke to Father on the phone approximately every three months in 2012. After 2012 or early 2013, Mother no longer got any phone calls from Father. Although Father claims that he sent birthday cards, Christmas cards, and other mail to A.M.S. during his incarceration, Mother stated that she has never received a letter, card, or gift from Father to A.M.S. Father has never given Mother any financial support or assistance to care for A.M.S.

[4] Mother and A.M.S. began living with Stepfather in July 2012, and Mother married Stepfather in August 2014. On April 28, 2015, Stepfather filed his verified petition for adoption of A.M.S. and Mother filed her consent to the adoption. In the adoption petition, Stepfather alleged that Father's consent to the adoption was not required because for a period of at least one year, Father failed without justifiable cause to communicate significantly with A.M.S. when he was able to do so, and failed to provide for the care and support of A.M.S. when able to do so as required by law or judicial decree.

[5] A hearing on the adoption petition was held on August 5, 2015. Counsel appeared on Father's behalf and Father appeared by phone. At the conclusion of the hearing, the trial court determined that Father's consent to the adoption was not required due to his failure without justifiable cause to communicate significantly with A.M.S. when he was able to do so for a period of at least one year. The trial court also concluded that A.M.S.'s adoption by Stepfather was in her best interests. Accordingly, the trial court granted Stepfather's petition for adoption. This appeal followed.

# Discussion and Decision

[6] Father's sole contention on appeal is that there was insufficient evidence to support the trial court's conclusion that his consent to the adoption was not required. When reviewing an adoption order, "we presume that the trial court's decision is correct, and the appellant bears the burden of rebutting this presumption." *In re Adoption of J.L.J.*, 4 N.E.3d 1189, 1194 (Ind. Ct. App. 2014), *trans. denied.* We will not disturb the trial court's ruling unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Id.*

[7] In an adoption proceeding, the petitioner must prove by clear and convincing evidence that a noncustodial parent's consent is not required for the adoption. *In re Adoption of M.S.*, 10 N.E.3d 1272, 1279 (Ind. Ct. App. 2014).

> In reviewing a judgment requiring proof by clear and convincing evidence, we may not impose our view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence. Further, we may not reweigh evidence or assess witness credibility.

*Id.* (citation omitted).

[8] Indiana Code Section 31-19-9-8 reads in pertinent part,

> (a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:

...

(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

(A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

[9] Paragraph (a)(2) is written in the disjunctive, and therefore either subparagraph provides grounds for dispensing with parental consent. *In re Adoption of B.R.*, 877 N.E.2d 217, 218 (Ind. Ct. App. 2007). Because the trial court's decision here rested on Father's lack of significant communication with A.M.S. for at least one year, we will focus only on the evidence regarding Father's lack of significant communication with A.M.S.

[10] The test for communication is not whether the noncustodial parent had *no* communication with the child, but whether he failed without justifiable cause to have *significant* communication when able to do so. *In re Adoption of S.W.*, 979 N.E.2d 633, 640 (Ind. Ct. App. 2012). "[T]he purpose of this statutory provision is to foster and maintain communication between non-custodial parents and their children, not to provide a means for parents to maintain just enough contact to thwart potential adoptive parents' efforts to provide a settled environment to the child." *Id.* (citation and quotation marks omitted).

[11]    The evidence indicates that Father has failed to significantly communicate with A.M.S. during the entire period of his incarceration, and that he has wholly failed to communicate with A.M.S. or Mother since early 2013. While Father gives numerous excuses, including Mother moving residences to live with Stepfather, Father offers no real explanation for his complete failure to reach out to his daughter in any meaningful way for almost two years. Regarding Father's lack of communication efforts, the trial court stated in relevant part:

> One letter a month doesn't mean significant communication. One Christmas card doesn't equate to significant communication. The fact is that you went to DOC in [2012] after you had been sitting in our jail for a while and waited until [2015] to request that the Court require that you have contact with your child.[1] You had the ability to do that in [2012, 2013, 2014]. You have failed to do that. You have failed to make the effort required of a parent who's incarcerated by your own actions to have contact with your child. Your child doesn't know who you are. It's the sad reality. She doesn't have any idea who you are and that's because you haven't communicated significantly with her or forced the issue. The requirement is on you. It's not on her mother. It's on you and you failed to do that. The Court therefore finds that your consent to the adoption is not warranted and that you have lost the ability to consent or object.

---

[1] The record indicates that, on January 12, 2015, Father filed a "Petition to Order Mother to Implement Regular Correspondence with Father Concerning Minor Child." Defendant's Ex. B. Father testified that the petition was never heard or ruled upon because he failed to properly serve the document upon the Montgomery County prosecutor. The record also indicates that this document may have been originally filed on November 1, 2013, but Father does not explain any of the circumstances surrounding the earlier filing.

Tr. at 68-69.

[12]     This summary of the evidence is quite poignant.  Father's assertions on appeal amount to a request that we reweigh the evidence, which we may not do. Considering only the probative evidence and reasonable inferences supporting the judgment, there was clear and convincing evidence before the trial court that for a period of at least one year, Father failed without justifiable cause to communicate significantly with A.M.S. when able to do so.  Accordingly, we conclude that the trial court did not err in determining that Father's consent was not required for the adoption.  We affirm the decree of adoption entered by the trial court.

[13]     Affirmed.

Vaidik, C.J., and Bailey, J., concur.